We'll turn to the eighth case of the day, United States v. Eural Black, and we see Mr. Tice and Ms. Bonamici again. Now, still good morning in your time zone, so go ahead, Mr. Tice. Once again, may it please the court, Bill Tice for Mr. Black. This is another compassionate release case. The judge below did not have the of gun. The government, however, conceded that Mr. Black was eligible for compassionate release. Now, the district court rejected that concession, and the government says somewhat rightly that the court doesn't have to accept a party's concessions because, of course, judges make the law, not the parties. But if the judge is going to reject the concession, the judge must have a basis for rejecting the concession. And whether or not you view this as coming under gun or not coming under gun, the judge's reason for finding ineligibility just does not stand up. Because when you look at the second page of the judge's opinion at 8-2 at the very bottom, the judge says Black does not demonstrate or even argue that he is not expected to recover from prostate cancer. Well, that was never the issue, whether or not he's going to and have been receiving cancer treatment. If they get COVID, they are at risk of serious illness or death. And unlike the prior case, there's no question about Mike versus his. The CDC says, if you have cancer, you are someone who is at risk of serious injury. And that, of course, is in addition to the risk of serious injury just from the fact of being in confinement. So the court below really never presented a good reason for rejecting the judge's concession. And even if we treat this as somehow now being governed by gun and the government's concession makes no difference at all, what the judge did here was really very, very unusual on another level. Gun, in finding that the courts were not limited to the policy statement, provided a caveat saying, you know, we think that the sentencing guidelines are useful guidance. And judges who stray too far beyond that guidance may find that they've abused their discretion. And Gun seems to say that, you know, maybe you shouldn't be going too far above what's in the guideline. But here we have a judge who's saying, you know, I see that under the guideline, as the government concedes, and this actually was legally the case, that this was a person who was eligible for compassionate release. And the judge says, no, I'm not. I'm going to take an even more restricted view of eligibility. But then that comes back to what is the basis for his saying he has a more restricted view. And what he's saying is, it doesn't appear that Black is going to die of prostate cancer very soon. Well, that really misses the point. The point is, what is his exposure to death or serious injury from COVID where he is at an increased risk because he is someone who's undergoing cancer treatment? Yes, sir. The way I look at this case, so at least for now, is that there seems to have been a pretty clear gun error with respect to Mr. Black's eligibility for release. And so I would be primarily interested in you addressing the judge's alternative stated reason for denying relief. Even if he is eligible, I would still deny after considering the 3553A factors. Okay. I would be happy to discuss that. We brought to the judge's attention that Mr. Black had this very long sentence because of stacking under 924C. And there are certainly cases then and even more so now that support that view. And the judge's discussion of all of that, which occurs at the end of his opinion, really does not come to grips with that in any meaningful sense. All the court says is that Black has a very long sentence and he hasn't served enough of that very long sentence. Well, of course he has a very long sentence. That was the whole point. And in terms of the part of the sentence that was based on the guidelines, he's already served that. So if you're talking about respect for the law and deterrence, general and specific, Black is already maxed out under those standards. How do you figure? Because the very long component of his sentence comes not from the guidelines, but from a mandatory statutory scheme. The 5 and the 25 on the 924C charges. Right. And so when we do the 3553A factors, we're obviously looking at the factors that you look at in order to determine a guidelines sentence. And the whole point of these 924Cs is that Congress was unhappy with the guideline sentence, at least in some instances, and said, put this on top of whatever the guideline sentence is. Now, you know, maybe... Mr. Tice, let me ask, I understand that's your position, but that was not judged, at least from what I read, that is decidedly not Judge Guzman's decision. He did not say anything about, when he analyzed the 3553 factors, he did not say anything about, at least from the way I read his opinion about mandatory minimums or about... He doesn't agree at all with what you just said about deterrence and promote respect for the law, and that your client has already satisfied those 3553 conditions. He says exactly the opposite in the last paragraph of his opinion. And don't we have to give some deference to that? No, you don't, Your Honor, because he has completely ignored the argument that was made in favor of his exercising discretion. And I know the Court has, even as recently as last week, has expressed some, not doubt, but question as to whether or not the judge has the same requirement as in an original sentencing to respond to the defendant's arguments. But this was a major argument that the defendant made about how he had this extraordinarily long sentence, and it wasn't based on the guidelines. And, you know, it's certainly reasonable to talk about making sure that there's respect for the law, but in order to come to any sort of reasonable conclusion on that matter, the judge has to at least acknowledge and deal with the argument that these mandatory statutory sentences were different. I mean, without a doubt, he disagreed with me, but that's not the point. If the judge is going to make a reasonable decision, the judge has to engage with the arguments, not just blow past them and deal in generalities that ignore crucial distinction between guideline sentences and statutory sentences. So do you think we need to apply the Cunningham line of cases with full force to denials of compassion and release? Well, you know, whenever we start talking about full force, it sounds very scary. We're talking here about, you know, a very substantial volume of cases in the district courts, highly discretionary decisions. Well, I think we have to recognize, as I think this court did in a First Step Act case, that we may not necessarily be talking about a full resentencing in every single aspect, but I would say, yes, if you have a defendant who is making a specific argument and it's not one that was previously resolved, you know, we're not talking about, I wasn't trying to relitigate drug weights or something like that, then the judge has an obligation to consider. And I would point out that two district courts in the Northern District have already granted this type of relief and the government never appealed those cases. So here we've got Mr. Black in a situation where the judge did not give him really a full consideration and all we're asking is the opportunity to get a reasoned decision from the district court. Thank you, Mr. Tice. Ms. Bonamici? Thank you, Your Honor. Deborah Bonamici on behalf of the United States. Your Honor, with respect to the first issue and the potential gun issue, we agree that the court's opinion could be read to suggest that the proper remedy here would be remand for a decision in the first instance under the standards of fourth and gun. But we also think that the court's opinion can be read as merely being consistent with the manner in which the parties have presented their arguments and just tracking the way that the arguments have been made. I'm not sure that that necessarily makes a difference, but that is one way to see the court's opinion. The court, but moving to the second question, in answer to your question about whether the parties think that Cunningham should apply with full force in the context of compassionate release, the government absolutely does not think that that is appropriate. We do understand that the court's order in denying or granting a motion for compassionate release ought to give the court an indication of the judge's reasons and rationale, and we agree that it would not be adequate to simply say deny. That is a pretty far stretch from Cunningham. Ms. Bonamici, can I ask you a question? Can you hear me okay? Sure. Okay. I want to ask you a question. I couldn't at first, but now... Okay. I pulled the microphone a little close to me. I want to ask you a question about Mr. Tice's point, which is interesting. The district court didn't deal with the argument that the sentence was driven by a mandatory minimum that wouldn't apply if Mr. Black was sentenced today. This is my question. The district court clearly acknowledged the 40-year sentence that Mr. Black received here. Should the district court in these instances be required to deal with that? In other words, if the defendant were to make an argument under the sentencing guidelines that, well, when he was originally sentenced for child pornography, he got the two-point computer enhancement, and everybody uses a computer now. District court judges are discounting that enhancement routinely when they sentence defendants in child pornography cases. That's our argument here that if he was sentenced today, he would have received something less than he had received at the time he was sentenced. The judge should consider that in the 3553 analysis. That, to me, seems to have some far-reaching consequences if we were to require district judges to do that. Should we do that? Should we require district judges to go back and say, I've considered the manner in which this sentence was originally imposed, and I'm going to consider the 3053 factors with that in mind? No, Your Honor. The judge should not be required to do that. And that's true because of the nature of the question, or the nature of the issue, as you just explained. But it's also true because courts have never required a recitation of all the 3553A factors and all the various aspects of the court's consideration in even imposing a sentence. This argument was made in the context of the 3553A factors. The court made clear that what it thought was the most important thing was the extreme seriousness of the defendant's conduct and offense, and expressly found that because of the extreme seriousness of that conduct, a reduction of sentence at that time to time served, which is what was requested at that time, would be inadequate to promote respect for the law, provide just punishment, and to afford adequate deterrence. This was completely reasonable. And it's not as though the court did not acknowledge that the argument was not made. The court quoted it at the beginning of its opinion. And by not addressing it specifically, the court implicitly found that that, in the context of 3553A, was not an argument that it considered valid. And that's really adequate. I'm not seeing anything, and so I'm just trying to adjust. I have another question for you regarding Judge Guzman's analysis, particularly with respect to Butner. It appeared at the time of the sentence, I couldn't tell exactly at the time of the motion whether he was at the Butner medical facility or if he was at the Butner camp. But regardless, he was at Butner, and I understand that he no longer is there, that he's no longer at Butner. How should we deal with that if that is, in fact, the case? Well, I'm not sure that that is necessarily relevant to—I mean, actually, I don't think that is necessarily relevant to the question presented here, which is whether the district court abused its discretion in denying the motion. The reality of the situation is that the defendant, at the time of the motion, at the time of the decision, the defendant was a year away from having previously, a year earlier, completed his dose—or been given his last dose of the medication that he was receiving, which is a hormonal medication. So he was moving toward having his cancer resolved at that time, but wasn't there. I assume that the transfer reflects that he is further away from those problems, but I really don't know, and I truly am speculating on that, so I really don't think that it's not in the record, and I'm not sure that it is appropriately considered here. If the court were to elect to remand this case to the district court for a reanalysis undergone, then it certainly would be appropriate for the district court to consider the current situation in reaching its conclusion—in reaching a new conclusion about whether compassionate release is warranted. I do want to confirm that I'm still with the court, because— We hear you. I'm sorry. I haven't been able to see you for almost all of that, so I just wasn't sure. Take a moment and reorient if you'd like. Okay. So, with respect to the specific argument about the sentence, the change in the law concerning the sentence, three things. First, that in no way, in no way detracts from the seriousness of the offense, which was the district court's primary and very reasonable concern in determining whether the 3553A—whether a reduction would be warranted in light of the 3553A factors. And that's particularly true because, as the court was well aware, as we made the court aware, if it wasn't, the subsequent change of the law would have no application to the defendant, because it was not Congress-elected not to make it retroactively applicable. So, that would not have happened. And as far as—I think, if I heard him correctly, I believe that Mr. Tice commented that the defendant may have maxed out already in what his sentence would be, and I don't think that that's accurate at all. I think that under the current—even if it were appropriate to apply current penalties to the defendant, which it is two five-year sentences deal with, and I don't believe that he has satisfied that, plus the sentence that he received for the two offenses. Ms. Bonamici, your second point didn't make it over the lake. I could not hear your second point. Could you repeat your second point? Oh, I'm sorry, Judge. What I'm responding to is what I think I heard Mr. Tice say about the defendant being, at this point, maxed out if we were to apply the new 924C penalties to him from the beginning, which, of course, the government would not agree that that would be appropriate. I don't agree with that, because I think that, by my calculations, that the defendant received—the combination of the sentence the defendant received on the counts, which would be five-five, I believe, if I'm correct, I don't believe that he has reached that place in the service of his sentence. I could be more specific if I had before me the actual figures, and I don't, and I apologize for that, but I don't think it's true that he is maxed out. And I don't think that—it was very clear that the judge did not consider his sentence to be egregiously large for however it got there. And to the extent that Mr. Tice focuses on the Dean decision, the application of Dean, which also postdated the defendant's sentencing, it would appear that it's—just from the record, just from the facts of the amounts, not from anything from the transcript or anything. I'm not basing it on that, because I don't have access to that right now. But just from the facts, it does not—it appears that the court may very well have taken into account the consecutive sentence in imposing sentence on the underlying crimes. And I say that because I believe that the underlying sentence was—the sentence on the underlying crimes was below the level that would have been warranted under the guidelines. I would prefer to check that to be sure that I'm right, but I think that's true. In any event, the defendant is not maxed out, no matter how you cut it. And the court was definitely—I mean, the court's view was that the sentence—it was important for the sentence to be served given the seriousness of the defendant's conduct holistically. The court's saying, this is a sentence. I think the sentence is just, and I don't think it should be cut short on the grounds that have been presented to me. And not—it's possible that other judges might disagree with that. I'm sure it is true that other judges might disagree with that. But that does not turn the decision into an abuse of discretion. Thank you, Ms. Bonamici. Mr. Tice, I think we've used up your time, but if you'd like two minutes of rebuttal, it's available to you. Thank you. When I made a reference to his maxing out, and I don't remember my exact words, what I was trying to convey to the court is that in terms of the guideline sentence that was statutory terms, he had already maxed out on that. And that sentence represented, under the guidelines, a judgment as to what would be the appropriate sentence for someone who committed these crimes. And indeed, if he had not been charged with and convicted of these separate gun crimes, that would have then allowed the judge to make a different, harsher calculation of the guidelines. So maybe the sentence would be higher that way. But I think the important thing to take away from this, and it really didn't surface in the briefs, but I think government counsel is hinting at the idea that because even under the new law, the judge would be obliged to impose two five-year consecutive terms to each other, consecutive to the guidelines, that he couldn't get relief. And that is not really accurate. Courts have come to the conclusion that when they grant compassionate release, they can grant a sentence of time served. People who have received life sentences get a sentence of time served or can get a sentence of time served if the judge decides that compassionate release is appropriate. So I hope this hasn't gotten too confused, and that's my effort to try to clarify things. I think that government counsel's remarks sort of illustrate that there are some imponderables here and things that were not considered, and that's why the case needs to go back. Thank you. Thank you very much to both counsel. Case will be taken under advisement.